UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-385-H

HUMANA HEALTH PLANS, INC.                                          PLAINTIFF

V.

PATTI POWELL                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Humana Health Plans ("Humana"), sued Defendant, Patti Powell ("Powell"), for reimbursement of medical expenses that Humana paid under the terms of an employee benefit plan. More specifically, Humana seeks equitable relief under 29 U.S.C. § 1132(a)(3) by way of constructive trust or equitable lien placed on the exact proceeds from the settlement of Powell's personal injury lawsuits. Powell argues that the relief Humana seeks is not equitable relief provided for under § 1132 and that, in any event, the Make-Whole Doctrine precludes recovery.

This case raises several interesting issues. For the reasons that follow, the Court concludes that although Humana would be entitled to pursue discovery to prove its entitlement to equitable relief in these circumstances, its failure to intervene and assert its subrogation rights as required by KRS 411.188(2), bars any further claim.

**I.**

Up to a point, the pertinent facts are undisputed. Patti Powell was married to Kenneth Powell. Mr. Powell was the sole owner and operator of Kenny's Excavation, Inc. That company

established and maintained an employee benefit plan (the "Plan") for its employees and their eligible dependents. Powell is such a dependent. The Plan utilizes Humana to provide health insurance benefits to those eligible persons. On October 2, 2002, Powell was severely injured in an automobile accident. As a result of the injuries, Powell sought and received medical care for which Humana extended medical benefits under the Plan in the amount of $24,518.41.

On September 30, 2002, Powell filed a civil action in Oldham Circuit Court against the driver of the other automobile as well as a claim against her own insurance carrier, Westfield Insurance Company, for underinsured motorists coverage. The lawsuit dragged on for quite awhile. After filing an amended complaint on August 29, 2006, Powell settled her claims against the negligent driver and her insurance company for the full amount of the policy limits in the amount of $100,000. Powell also settled her UMI claims against Westfield in the amount of $450,000. During the life of the lawsuit, Humana did not intervene. Although Humana was in contact with Powell's counsel regarding the status of the litigation, counsel never provided Humana with notice of its subrogation rights pursuant to KRS 411.188.

Following the payment of attorney's fees and costs for the two settlements, Powell received a check for the settlement proceeds in the amount of $304,676.72. These funds were paid directly to Powell and not to any otherwise specifically identifiable fund or trust containing limitations upon its use. Out of the settlement proceeds, Powell made improvements to her home and paid debts in the amount of $60,000, made investments and monetary gifts and co-mingled the remainder of the funds. Powell is not specific about the whereabouts of the remaining funds. The Court will assume that some of those funds remain in a bank account under Powell's control.

On July 24, 2007, Humana filed suit in federal court asking for the imposition of a constructive trust or an equitable lien over specific funds identified as having come from the state court settlement. The Plan contains a provision that requires its beneficiaries to reimburse the Plan for medical benefits if they receive a recovery from another source, such as a liability or underinsured motorists insurer. Although Powell does not deny the provisions of the Plan, she has stated that she did not receive any document from Humana informing her that it would assert any claim against her for health benefits which it paid. Humana knew of the automobile accident and the subsequent civil action as early as November 2002. It provided medical information to Powell's attorneys and received updates on the status of the case from her attorneys from time to time. However, Humana apparently took no specific action to protect its interest in the state court action nor did it contract with Powell's attorneys to do the same.

Humana and Powell have moved for summary judgment as to whether Humana may assert this claim. The Court will address each of the three significant issues raised: (1) whether Humana can assert a claim for equitable relief in these circumstances, (2) whether the Make-Whole doctrine bars Humana's claim of equitable relief, and (3) whether Humana's claim is barred due to the failure to comply with KRS 411.188.

## II.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden to show "an absence of evidence to support the nonmoving party's case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party may not rest on mere allegations, but "must come forward with

specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Cov., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

The first question presented is whether Humana can assert a claim for equitable relief in these circumstances under 29 U.S.C. § 1000-1461 ("ERISA"), which would impose a constructive trust or equitable lien upon funds in Powell's possession or control. Humana cites *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006), for the proposition that such equitable relief is available in these circumstances. Powell cites *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) [hereinafter *Knudson*] for the proposition that it is not. These two cases represent circumstances at the opposing extremes of those here. The issue presented to the Court represents facts along the continuum, for which *Sereboff* and *Knudson* provide the outer poles.

ERISA "imposes far-reaching standards governing the operation of [employee pension and welfare benefit] plans, including a set of 'standards of conduct, responsibility, and obligation for fiduciaries' entrusted with management of the plans." *Corley v. Hecht Co.*, 530 F. Supp. 1155, 1160 (U.S.D.C. 1982) (citations omitted). Section 1132 (a)(3) of ERISA permits fiduciaries to bring civil actions "to obtain equitable relief to redress violations of the statute or the terms of the plan." § 1132(a)(3)(B). The crux of the present issue is whether the proposed relief is an available equitable remedy under ERISA or it is a prohibited legal remedy.

The Supreme Court first addressed this question in *Knudson*. Prior to *Knudson* the question of whether relief that looked like legal relief could actually be considered equitable relief under ERISA remained open. *See Knudson*, 534 U.S. at 210-11. The beneficiary had

-4-

received a settlement from a car accident, which the district court placed into a separate trust pending the resolution of the suit regarding reimbursement. *Id.* at 207-08. The funds, however, were completely out of the beneficiary's control. *Id.* at 208. The Supreme Court held that in seeking injunctive relief, the provider really sought "to impose personal liability on [the insured] for a contractual obligation to pay money," which is a legal remedy not available under the ERISA scheme because it was not typically available in equity. *Id.* at 210, 219. Because the provider's claim was not for particular funds belonging to the provider, but rather was a claim "that [the provider was] contractually entitled to *some* funds for benefits that they conferred," *Id.* at 214 (emphasis in original), the Supreme Court denied the remedy.[1]

In *Sereboff*, the Supreme Court laid to rest the issue of whether a constructive trust against an individual's account would constitute equitable relief under the ERISA definition. *Sereboff*, 547 U.S. at 361. Again the Supreme Court set out to answer whether the relief sought was "equitable" relief available under ERISA. *Id.* at 361. It held that the provider "sought 'specifically identifiable' funds that were 'within the possession and control of the [beneficiaries]'" and therefore the relief was permissible equitable relief. *Id.* at 362 (citing 407 F.3d at 218). The Supreme Court distinguished *Knudson*, concluding that the provider here was not seeking to impose merely personal liability, but sought recovery through equitable means on a "specifically identified fund" and not from the beneficiaries' assets generally. *Id.* at 363. In so distinguishing, it made a particular point to note that the requirement of equitable relief was not met in *Knudson* "because 'the funds to which petitioners claim[ed] an entitlement' were not in

---

[1] Although the Supreme Court denied the remedy by a 5-4 decision, all members of the Court agreed that the constructive trust was available under ERISA.

[the beneficiary's] possession, but had instead been placed in a 'Special Needs Trust' under California law." *Id.* at 362 (quoting *Knudson*, at 207, 214). Thus, the Supreme Court clarified that, under ERISA, equitable relief is available against the beneficiary only if the beneficiary possesses the funds.

Here, the funds at issue were dispersed to Powell and, in theory, the constructive trust remedy is available. The only question remaining is whether the funds are traceable. Without the appropriate discovery, the Court cannot know whether our circumstances are more like *Knudson* or *Sereboff*. Humana has a right to attach to the funds Powell possesses and to which it has title due to the reimbursement provision in the plan. The Court would then determine whether the funds in Powell's account are funds to which Powell has a right of title.

## IV.

The next question is whether the Make-Whole Doctrine bars Humana's attempt to obtain equitable relief against specific funds. This doctrine provides that an insurance provider may not exercise its subrogation rights while the insured's actual loss exceeds the amounts recovered from the wrongdoer and other insurance carriers. *Copeland Oaks v. Haupt*, 209 F.3d 811, 814 (6th Cir. 2000).

The Make-Whole Doctrine applies unless the insured acts upon the authority of a clear contractual provision to the contrary. *Id.* at 813. The provision in *Copeland Oaks* stated:

> The Covered Person agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a priority of *any* funds paid by a third party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical or dental charges, attorney fees, or other costs and expenses.

*Id.* at 813 (emphasis in original). That language makes no reference, directly or indirectly, to

whether the reimbursement obligation is tempered by the requirement that the insured be compensated in whole for his or her loss.

      The Plan at issue here states:

> We will automatically have a lien to the full extent of benefits advanced upon any recovery, by settlement, judgement [sic] or otherwise that you receive from the responsible party, or any person or organization making payment on behalf of the responsible party . . . and we shall have a first priority lien, regardless whether (i) you have been fully compensated for your whole loss[.]

In our circumstances, Humana must establish that its Plan creates both a priority to the funds recovered and a right to any full or partial recovery. *Id.* at 813. The Court views this provision as meeting both requirements.

      The Court finds the Plan's "make whole" language to be much clearer and all-encompassing than that discussed in *Copeland*. Here, the Plan establishes a priority for recovery "regardless whether (i) you have been fully compensated for your whole loss[.]" This language directly addresses Humana's priority to recover regardless of whether Plaintiff has recovered all of her loss. The *Copeland* plan contained no language so specific. Defendant argues that the provision can only satisfy the Make-Whole Doctrine by using that specific term of art. The Court disagrees. Although the concept has been formally denoted as the "Make-Whole Doctrine," that term is not so uniquely illustrative as to require its specific usage to satisfy the legal requirements it embodies. In fact, the description used in Humana's plan, which states there shall be recovery "regardless whether (i) you have been fully compensated for your whole loss," more clearly states, for the understanding of an insured layman, the insurance company's rights than a reference to the "Make-Whole Doctrine" would. The Court concludes that this

language is plenty specific to include circumstances where Plaintiff has not been fully compensated. The language need not specifically mention the "Make-Whole Doctrine" in order to create this priority.

Subsequent published and unpublished Sixth Circuit opinions have held that insurance provisions do not satisfy the Make-Whole Doctrine. *See Hiney Printing Co. v. Brantner*, 243 F.3d 956, 959 (6th Cir. 2001). *See also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949 (6th Cir. 2004) (unpublished table opinion)[2]; *Qualchoice, Inc. v. Williams*, 14 Fed. Appx. 417 (6th Cir. 2001)[3]; *Phillips v. Humana Health Plans of Kentucky, Inc.*, 238 F.3d 423, 2000 WL 1872058, *3 (6th Cir. 2000) (unpublished table opinion)[4]. In so finding, the Sixth

---

[2] The relevant plan reimbursement language states:

> In the event of any payment under this Plan, the Trustees shall be subrogated to all the rights of recovery thereof of either a Covered Employee or a Covered Dependent against any person or entity, and the Covered Employee or Covered Dependent shall execute and deliver instruments and papers and whatsoever else is necessary to secure such rights. Neither the Covered Employee or the Covered Dependent shall do anything after a loss to prejudice such rights, and common law doctrines such as "make whole" and "common fund" or other similar doctrines shall not be applied to reduce the right of assignment or reimbursement.

*Rodrigquez*, 89 Fed. Appx. at 956. The Sixth Circuit panel concluded this was insufficient to satisfy the make-whole doctrine because it failed to establish who has priority over the funds. *Id.* at 957. This suggests that the mere use of the term of art is actually insufficient to satisfy the Sixth Circuit's requirements outline in *Copeland Oaks*.

[3] The relevant plan language reads:

> You agree to protect our lien rights if you are injured or become ill through *419 the act of a third party. If you are due money from such third party for the cost of such Covered Services, we will be subrogated for you for the purpose of collecting for those Covered Services. We will have the right to bring suit against such third party in your name to the extent permitted by applicable state law. If you receive payment, however designated, from a third party, you are obligated to reimburse us, less our pro rata share of the reasonable attorneys' fees and costs you sustained in obtaining such recovery.

*Qualchoice*, 14 Fed. Appx. at 418-19.

[4] The plan language reads:

> We will automatically have a lien to the extent of benefits advanced upon any recovery, by settlement, judgement or otherwise that you receive from the responsible party, or any person or

-8-

Circuit did not resort to a test that simply looked for a term of art, but instead pursued the two-step analysis outline in *Copeland Oaks* and found that the provisions at issue failed to satisfy at least one of the prongs. *Hiney Printing Co.*, 243 at 959. *See also Rodriguez*, 89 Fed. Appx. at 957. In *Hiney Printing Co.*, the Sixth Circuit concluded that the language may establish who has first priority to any recovered funds, but the provision failed to "unambiguously establish a right to any full or partial recovery." 243 at 959, 960.[5] The Sixth Circuit concluded that this failure was synonymous with the failure in *Copeland Oaks*: the plan's language "does not address whether [the right to reimbursement] applies when [the insured] has not been fully compensated for her injuries." *Id.* at 959.

No case requires that the policy specifically reference the Make-Whole Doctrine to avoid

---

organization making payment on behalf of the responsible party, including first party, underinsured and uninsured motorist coverage. The lien will be in the amount of benefits provided or paid by us for the treatment of the condition for which the third party is responsible.

*Phillips*, 238 F.3d 423, *3.

[5] The relevant plan language is found in two provisions. The right of subrogation provision states:

The Plan shall be subrogated to the extent of any payments under this Plan of health coverage to all of the Plan Member's right of recovery therefore irregardless of the entity or individual from who the recovery may be due ... The Plan will have the right, at its discretion and Plan Administrator's sole instigation, to take legal action on behalf of the insured or on behalf of the Plan itself. Any amounts so recovered, however designated, shall be apportioned as follows: this Plan shall be reimbursed to the extent of its payments under this plan of health coverage. If any balance then remains from such recovery, it shall be applied to reimburse the Plan Member and any other policy providing benefits to the Plan Member as their interest may appear.

*Hiney Printing Co.*, 243 F.3d at 958. The right of reimbursement provision states:

If the Plan member recovers damages from any party or through any coverage named above, he must hold in trust for the Employer the proceeds of the recovery, and must reimburse us to the extent of payment made.

*Id.*

its application.⁶ The Court finds that the language of the Plan is sufficiently detailed and complies with the two-pronged requirement outlined in *Copeland Oaks*. Thus, the Make-Whole Doctrine does not bar Humana's claim.

V.

Finally, Defendant argues that Humana cannot assert an equitable remedy because it failed to assert its subrogation rights pursuant to KRS 411.188. Plaintiff responds that Defendant is estopped from arguing that Plaintiff cannot assert an equitable remedy, because Defendant failed to give the required KRS 411.188(2) notice and therefore Plaintiff did not have an obligation to assert its subrogation rights by intervening.⁷

The relevant statute, KRS 411.188(2), states:

> At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff or his attorney to notify, by certified mail, those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The notification shall state that a failure to assert subrogation rights by intervention, pursuant to Kentucky Civil Rule 24, will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action.

The statute clearly and explicitly requires an insurance company to assert its subrogation rights by intervention to preserve them. Failure to do so undoubtedly results in a loss of those rights, as they are not preserved. KRS 411.188(2); *McCormack Baron & Assocs. v. Trudeaux*, 885 S.W.2d

---

⁶ In fact, the Sixth Circuit has noted in an unpublished opinion that other circuits have found language similar to *Copeland Oaks* to be unambiguous and sufficient to avoid application of the make-whole doctrine. *Qualchoice, Inc.*, 14 Fed. Appx. at 420 n.1.

⁷ The Kentucky Supreme Court has held that KRS 411.188 is unconstitutional. *O'Bryan v. Hedgespeth*, 892 S.W.2d 571, 578 (Ky. 1995). The analysis, however, was focused solely on the constitutionality of section 3 of the statute, relating to the introduction of evidence of collateral source payments. *See id.* The Kentucky Court of Appeals has since then explicitly limited the holding in *O'Bryan* to 411.188(3), leaving in tact the rest of the statute, including 411.188(2), which is at issue in this case. *Gov't Employees Ins. Co. v. Winsett*, 153 S.W.3d 862, 865 (Ky. App. 2004).

708, 711 (Ky. App. 1994). The parties do not dispute that Humana did not intervene in Defendant's recovery suit. The only remaining question is whether Defendant's failure to notify Humana of its subrogation rights pursuant to 411.188(2) forgives Humana of this failure. It is upon this question that Humana's attempt at equitable relief ultimately fails.

The Kentucky Court of Appeals has held that even though the record did "not establish strict compliance with KRS 411.188(2)," because the insured never sent the required notice to her insurance carrier, the insurance carrier was still required to comply with the statute because it was "aware of [the] action and its subrogation rights." *Lampton v. Boley*, 870 S.W.2d 428, 431 (Ky. App. 1993). The court concluded that "all parties [were] sufficiently aware of KRS 411.188 to not foreclose its application." *Id.* One year later, in *McCormack Baron & Assocs.*, the Kentucky Court of Appeals again applied 411.188 based upon evidence that, despite a failure to receive official 411.188(2) notice, the insurance company had actual knowledge of the on-going lawsuit. *McCormack Baron & Assocs.*, 885 S.W.2d at 709, 711. These two cases appear to confirm that Kentucky courts do not require strict compliance with the 411.188 notification requirements, but rather fulfillment of its purpose. The Court will apply this approach.

Humana did not receive the official 411.188(2) notice. However, Humana was in regular contact with Defendant's counsel and was given regular status updates of the underlying proceedings. Humana and Defendant's counsel had discussed issues of subrogation rights. Humana sought to intervene, however, only after Defendant informed it that she would not reimburse. The evidence is that Humana was clearly aware not only of the pending lawsuit, but also its right to intervene. Thus, the purposes of KRS 411.188(2) notice are satisfied and it should be applied to this case. Since Humana is bound by 411.188, and it has not intervened, the

Court concludes that it may not pursue its subrogation rights.

      The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record